## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN,
## SOUTHERN (DETROIT) DIVISION

THE CASCADES OF IRON RIVER )
HOLDINGS, LLC, and BENJAMIN T. )
FRIEDMAN, )
 )
   Plaintiffs, )
   v. ) Case No. 24-CV-10013
 ) Hon. Mark A. Goldsmith
IRON RIVER LAND COMPANY, LLC, ) Magistrate Hon. Curtis Ivy, Jr.
and ROBERT W. POSSANZA, JR., )
 )
   Defendants. )

## RESPONSE TO DEFENDANTS IRON RIVER LAND COMPANY, LLC and ROBERT W. POSSANZA, JR.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**NOW COME** Plaintiffs THE CASCADES OF IRON RIVER HOLDINGS, LLC and BENJAMIN T. FRIEDMAN, by and through their attorneys, LOFTUS & EISENBERG, LTD. by Ross Good, and hereby submit their Response to Defendants' Motion to Dismiss Plaintiffs' Complaint and state as follows and further relies on the accompanying brief:

1. Defendants' arguments are premised on contradicting or ignoring the well pled facts, namely that the defect was known to Defendants and concealed.

2. Were the defect not concealed, Plaintiffs would not be in this position. The facts of whether the defect was concealed and whether Defendants were aware of the defect are questions of fact to be resolved later.

i

3.     This case turns on the very basics: "To survive a motion to dismiss, a plaintiff must allege 'facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level.'" *Rocket Mortg., LLC v. Gamero Grp., Inc.*, 2024 U.S. Dist. LEXIS 28696, *3 (Goldstein, J.)  *quoting  Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Plaintiffs pled facts that Defendants knew of the defect and concealed it; and the claims must proceed to a point of the litigation where Defendants can properly contradict those facts.

WHEREFORE, Plaintiffs, THE CASCADES OF IRON RIVER HOLDINGS, LLC and BENJAMIN T. FRIEDMAN through their attorney, Ross Good of LOFTUS & EISENBERG, LTD., respectfully request that the Defendant's Motion to Dismiss be denied and for any other further relief as is deemed just and proper.

Dated: March 15, 2024                          Respectfully submitted,

**LOFTUS & EISENBERG, LTD.**

By: ___/s/*Ross Good*___
　　　Ross Good, Esq.
　　　Attorney for Plaintiffs
　　　161 N. Clark, Suite 1600
　　　Chicago, Illinois 60601
　　　p: 312.899.7629

## LOCAL RULE CERTIFICATION

I, Ross Good of LOFTUS & EISENBERG, LTD., certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Dated: March 15, 2024                Respectfully submitted,

**LOFTUS & EISENBERG, LTD.**

By:  __/s/*Ross Good*___
        Ross Good, Esq.
        Attorney for Plaintiffs
        161 N. Clark, Suite 1600
        Chicago, Illinois 60601
        p: 312.899.7629

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN,
### SOUTHERN (DETROIT) DIVISION

THE CASCADES OF IRON RIVER  )
HOLDINGS, LLC, and BENJAMIN T. )
FRIEDMAN,         )
            )
    Plaintiffs,     )
    v.         )  Case No. 24-CV-10013
            )  Hon. Mark A. Goldsmith
IRON RIVER LAND COMPANY, LLC, )  Magistrate Hon. Curtis Ivy, Jr.
and ROBERT W. POSSANZA, JR.,  )
            )
    Defendants.   )

_____

## **BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** .............................................................................v

**TABLE OF AUTHORITIES** ..................................................... vi

**RESPONSE TO STATEMENT OF ISSUES PRESENTED** ........................... vii

**BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** .............................................1

   I.   INTRODUCTION ...........................................................1

   II.  STATEMENT OF FACTS ................................................1

   III. ARGUMENT ...............................................................3

      A.  Standard of Review ...............................................3

      B.  THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT, IF ACCEPTED AS TRUE, ARE SUFFICIENT TO SUPPORT A CLAIM FOR BREACH OF CONTRACT. ..............................................................3

      C.  THE ALLEGATIONS IN PLAINTIFF'S COMPLAINT, IF ACCEPTED AS TRUE, ARE SUFFICIENT TO SUPPORT A CLAIM FOR FRAUD.........7

      D.  DEFENDANTS' SPOLIATION ARGUMENT IS A NON-SEQUITOR AND NOT AN APPROPRIATE ARGUMENT TO MAKE IN A 12(B)(6) MOTION. .....................................................................11

   IV. CONCLUSION ...........................................................14

**CERTIFICATE OF SERVICE** ..............................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)............................................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)..............................................3

*Burton v. Beaumont Hosp*., 373 F.Supp.2d 707 (E.D. Mich. 2005)......................4

*Webster v. Edward D. Jones & Co*., 197 F.3d 815 (6th Cir. 1999)........................4

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010) ............................................7

*Hi–Way Motor Co. v. International Harvester Co*., 398 Mich. 330 (1976)..........7

*Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc*., 583 F.3d 935  (6th Cir. 2009)......................................7-8

*Uhl v. Komatsu Forklift Co.*, 512 F.3d 294 (6th Cir. 2008) ................................11

*Rood v. Midwest Matrix Mart, Inc*., 350 Mich. 559 (1957) ................................11

*Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc*., 209 Mich. App. 365 (1995)..............................................................................................................11

*City of Livonia v. Aquatic Renovation Sys*., 2022 U.S. Dist. LEXIS 93072 (E.D. Mich. May 24, 2022) ............................................................................................13

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ...............................................................................3, 11

Fed. R. Civ. P. 9(b) ...............................................................................................7

## <u>RESPONSE TO STATEMENT OF ISSUES PRESENTED</u>

I.    Whether Plaintiffs' Complaint should be dismissed as Plaintiffs fail to state a claim for Breach of Contract.

Defendants answer "yes."
Plaintiff answers "no."
The Court should answer: No.

II.    Whether Plaintiff's claims should be dismissed because Plaintiffs' claims of Fraud are barred.

Defendants answer "yes."
Plaintiff answers "no."
The Court should answer: No.

III.    Whether this court should order an adverse inference and utilize same in determining the instant motion before it based on Spoliation of Evidence.

Defendants answer "yes."
Plaintiff answers "no."
The Court should answer: No.

## BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

### I.      INTRODUCTION

Defendants boldly argue that so long as the defects they knew about were sufficiently hidden to escape the due diligence period, they can escape liability. In support of this audacious argument, Defendants directly contradict well pled facts that must be accepted as true at this early stage of the litigation. Plaintiffs' well-pled facts establish causes of action for breach of contract and fraud.

### II.      STATEMENT OF FACTS

The key facts, impermissibly contradicted by Defendants, are worth restating here. The Complaint alleges clearly that the defects were known to the seller and concealed during the due diligence period so that they could not be uncovered.

"The seller concealed the condition of the roof by warrantying that all major structural components of the building were in good working order when the seller knew – based upon persistent leaking issues – that the roof was not in good working order and needed to be replaced." (Doc. 13 "Cmplt." ¶ 1).

"Shortly after taking possession of the Property, it became readily apparent that the roof of the Property was not in good working order and was not in good condition for its intended use." (Cmplt. ¶ 16).

"Buyer became aware of leaks within the Property from the roof and employees informed Buyer that these leaks had been an ongoing issue for years.

Employees further informed Buyer that Seller had only ever performed temporary repairs on the roof as well as cosmetic repairs to interior locations that were affected by water damage." (Cmplt. ¶ 17).

"As of December 31, 2018, Seller was aware of the fact that the roof was not in good working order and was not in good condition for its intended use. Seller intentionally concealed the condition of the roof by making temporary repairs to the roof and cosmetic repairs to interior locations that were affected by water damage." (Cmplt. ¶ 18).

"In August, 2020, Buyer engaged Champion Roofing, Inc. to inspect the roof. Champion Roofing found the roof to be in poor condition, having split seams and holes that had been repaired in an ad hoc, inadequate manner. Champion Roofing performed numerous cores to analyze the condition of the underlying insulation and discovered the insulation to be completely saturated in many areas. Champion Roofing determined that the roof was in failure and needed to be replaced. Champion Roofing further opined that the saturation of the insulation indicated a longstanding problem, not a recent one."  (Cmplt. ¶ 19).

"Because of the temporary repairs that had been made to conceal the split seams and holes as well as the latent condition of the saturated insulation, Buyer would not have been able to discover the true condition of the roof even with a thorough investigation." (Cmplt. ¶ 20).

### III.   ARGUMENT
#### A.   Standard of Review

Fed. R. Civ. Proc. 12(b)(6) allows dismissal of a complaint for failure to state a clam upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The plaintiff is not required to provide "detailed factual allegations," but rather the "factual allegations must be enough to raise a right to relief above a speculative level." *Id.* at 555. In determining whether a complaint states a claim upon which relief can be granted, the Court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal citation marks omitted).

#### B.   THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT, IF ACCEPTED AS TRUE, ARE SUFFICIENT TO SUPPORT A CLAIM FOR BREACH OF CONTRACT.

Under Michigan law, the elements of a breach of contract claim are (1) the existence of a contract between the parties, (2) the terms of the contract require

performance of a certain action, (3) a party breached the contract, and (4) the breach caused the other party injury. *Burton v. Beaumont Hosp*., 373 F.Supp.2d 707, 718 (E.D. Mich. 2005) (citing *Webster v. Edward D. Jones & Co*., 197 F.3d 815, 819 (6th Cir. 1999)).

The allegations are relatively simple. Plaintiffs purchased a business and the accompanying building from Defendants. The Asset Purchase Agreement (the "APA") for the purchase of the Property contained a clause by which Defendant-Sellers represented that all structural components of the building were "in good working order" with no defects. (Doc 13-1 "APA", Section 9(i)). This was a false statement. The allegations in the Complaint sufficiently allege that "leaks had been an ongoing issue for years," with employees confirming that Defendant-Sellers "only ever performed temporary repairs on the roof as well as cosmetic repairs to interior locations that were affected by water damage." (Cmplt. ¶ 17). The statements of the employees confirm that Defendant-Sellers were "aware of the fact that the roof was not in good working order and was not in good condition for its intended use." (Cmplt. ¶ 18). It is reasonably inferable from these allegations that Defendant-Sellers "intentionally concealed the condition of the roof by making temporary repairs to the roof and cosmetic repairs to interior locations that were affected by water damage." (Cmplt. ¶ 18).

4

You would expect a defendant in this position to deny that the roof leaked or deny that he concealed the poor condition with temporary and cosmetic repairs. Incredibly, Defendant-Sellers do not deny that the roof leaked, but shamelessly argue that it was Plaintiffs' fault for trusting their misrepresentations! The premise of Defendants' motion to dismiss is that Plaintiffs were not entitled to rely on the clause in the APA that represented that all structural components of the building were "in good working order" with no defects and, instead, should have uncovered their lie during the due diligence period through roof inspections. This flies in the face of contract law, as it would make Section 9(i) of the APA superfluous.

Defendants further suggest that "had Plaintiffs inspected the premises the inspection would have likewise reflected an aged roof in poor or good condition." (Doc. 11 "Motion", p. 20.) This is an assumption that is inappropriate for the pleading stage and which Plaintiffs address directly in the Complaint. For example, any assumption that an inspection would have revealed the poor condition of the roof is contradicted by Plaintiffs' allegation that "Seller intentionally concealed the condition of the roof by making temporary repairs to the roof." (Cmplt. ¶ 18). Plaintiff explains that "temporary repairs…had been made to conceal the split seams and holes." (Cmplt. ¶ 20). Additionally, Plaintiffs clarify that "the saturated insulation" was a "latent condition" that required Plaintiffs' roofer to take "numerous cores." (Cmplt. ¶¶ 19-20). As such, "Buyer would not have been able to

discover the true condition of the roof even with a thorough investigation." (Cmplt. ¶ 20).

In their motion, Defendants suggest that they "made no representation that the Plaintiffs were purchasing a building with a new roof." (Motion, p. 20). Defendants' assertion falls flat. Defendants *actually represented* that "[t]here exists no defective condition" in a structural component and that "[a]ll major structural…systems and elements are in good working order and condition for their intended uses." (Cmplt. ¶ 11). Plaintiffs make no suggestion that they believed the roof was new. But Plaintiffs were entitled to rely on the representations that the roof was in good working order, which it was not. A roof that is in good working order <u>should not leak</u>. In fact, protection from the elements is one of the primary "intended uses" of a roof.

Finally, Defendants take a last gasp approach and claim "[t]he sole representation was that the roof was in good working order and in fact it was, it merely required maintenance." (Motion, p. 20.) Again, a roof that is in good working order should not leak. And a roof that has allowed the underlying insulation "to be completely saturated in many areas" is not in good working order. (Cmplt. ¶ 19). Regardless, the question of whether the roof was or was not in good working order is a question of fact inappropriate for determination at this stage of the case. But

Plaintiffs' allegations, most notably the investigation of its roofing contractor, make the breach of contract claim entirely plausible.

The facts are what they are. Defendants represented that all structural components – which undoubtedly includes the roof – were in good working order and free from defect. But the roof leaked. And Defendants knew it leaked. Defendants cannot hide behind Plaintiffs' right to perform additional due diligence in spite of a blatant misrepresentation. It would defeat the purpose of the APA.

## C. THE ALLEGATIONS IN PLAINTIFF'S COMPLAINT, IF ACCEPTED AS TRUE, ARE SUFFICIENT TO SUPPORT A CLAIM FOR FRAUD.

When bringing a claim for fraud, a party must state "with particularity" the circumstances constituting the fraud. Fed. R. Civ. P. 9(b); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010). The complaint must allege (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Hi–Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976). The complaint must also "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana*

*State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc*., 583 F.3d 935, 942-43 (6th Cir. 2009) (quotation marks and citation omitted).

Plaintiffs' Complaint easily establishes a claim for fraud with facts stated "with particularity" that address each element. First, the Complaint alleges that Defendants made a material representation; namely the representation in Section 9(i) of the APA that states "[t]here exists no defective condition, structural or otherwise, with respect to the Purchased Assets" and that "[a]ll major structural, electrical and mechanical systems and elements are in good working order and condition for their intended uses in all material respects and will be in such good working order and condition on the Closing Date (ordinary wear and tear excepted)." (Cmplt. ¶ 11). It is undoubtedly material that the structural components of a building are in good working order.

Second, the Complaint alleges that Defendants' representation was false and that, indeed, the roof was leaking and in poor condition. The Complaint states: "Shortly after taking possession of the Property, it became readily apparent that the roof of the Property was not in good working order and was not in good condition for its intended use." (Cmplt. ¶ 16). "Specifically, Buyer became aware of leaks within the Property from the roof and employees informed Buyer that these leaks had been an ongoing issue for years." (Cmplt. ¶ 17). In fact, Plaintiffs' roofer "found

the roof to be in poor condition, having split seams and holes that had been repaired in an ad hoc, inadequate manner." (Cmplt. ¶ 19). The roofer performed core samples that revealed "the insulation to be completely saturated in many areas." (Cmplt. ¶ 19).

Third, the Complaint alleges that Defendant-Sellers knew the representation to be false when they made it. Specifically, "employees informed Buyer that these leaks had been an ongoing issue for years" and that "Seller had only ever performed temporary repairs on the roof as well as cosmetic repairs to interior locations that were affected by water damage." (Cmplt. ¶ 17). As such, at the time of the sale, "Seller was aware of the fact that the roof was not in good working order and was not in good condition for its intended use" and, instead, "intentionally concealed the condition of the roof by making temporary repairs to the roof and cosmetic repairs to interior locations that were affected by water damage." (Cmplt. ¶¶ 18, 53).

Fourth, it is a reasonable inference of the entirety of the allegations (i.e. the sale, the misrepresentation in the APA, the temporary repairs, and the intentional concealment of water damage) that Defendants-Sellers made the misrepresentation with the intention that it should be acted upon by Plaintiffs.

Fifth, the Complaint alleges that Plaintiff acted in reliance on the misrepresentation as it purchased the Property without any offset. Plaintiffs specifically allege "Buyer would not have agreed to the purchase price under the

APA but for this material misrepresentation regarding the condition of structural components of the Property." (Cmplt. ¶ 55). It is certainly a reasonable inference that if a buyer had been made aware of the poor condition of a structural element such as a roof, that it would affect the purchase price.

Finally, the Complaint identifies Plaintiffs' injury. Namely, "Buyer engaged Champion Roofing to replace the roof at a cost of $240,000." (Cmplt. ¶ 21). Undoubtedly, if Plaintiffs had been made aware of the immediate need for a new roof, the purchase price would have been reduced by the attendant cost.

As in its section related to breach of contract, Defendants make a big to do about the due diligence period suggesting that "there can be no fraud where a person has the means to determine that a representation is not true." (Motion, p. 8). Plaintiffs' Complaint addresses this point directly: "Although Buyer was given access and an opportunity to inspect the Property prior to Closing, Seller's temporary repairs concealed the latent defects of the roof and Buyer was unable to discover the actual poor condition of the roof." (Cmplt. ¶ 54).

At the very least, it is a question of fact as to whether Plaintiffs could have discovered the defect or whether the temporary repairs concealed latent defects such that Plaintiffs were unable to discover the actual poor condition of the roof.

In addition, it is worth noting that in their motion, Defendants suggest that Plaintiffs are alleging "silent fraud" for a failure to provide information. This is not

the case. Defendants made an express representation in the APA that the structural components of the building were in good working order and free from defect. (APA, Section 9(i)). This proactive statement is not silence. Defendants actively concealed defects then proactively represented that the major components of the Property were in good working order with the intention that Plaintiff rely on those lies and purchase the Property. This is fraud.

Furthermore, under Michigan law, parties are entitled to bring fraud in the inducement actions when they are induced into entering into an agreement on the basis of false representations. *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 304 (6th Cir. 2008); *Rood v. Midwest Matrix Mart, Inc.,* 350 Mich. 559 (1957). Fraud in the inducement is exactly what the Complaint asserts. Defendants fraudulently induced Plaintiffs into buying the Property which Defendants knew had a significant defect. A claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract but that do not in themselves constitute contract or warranty terms subsequently breached by the seller. *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 375 (1995). The claims for fraud in the inducement must be separate from breach of terms of the contract. *Id.*

**D. DEFENDANTS' SPOLIATION ARGUMENT IS A NON-SEQUITOR AND NOT AN APPROPRIATE ARGUMENT TO MAKE IN A 12(B)(6) MOTION.**

In the final section of their motion, Defendants make the disingenuous argument that the roof they knew was leaking and to which they had made temporary, ad hoc, and inadequate repairs should not have been repaired until they had an opportunity to inspect it. Logic – and, indeed, the elements of spoliation – contradicts this argument.

Defendants correctly note that "[s]poliation of evidence occurs when a party intentionally alters or destroys relevant evidence <u>before an opposing party has an opportunity to examine it</u>." (Motion, p. 22) (Emphasis added). The emphasized portion of Defendants' statement highlights the way in which their argument is incorrect. At all times prior to the sale, Defendants knew of the defects in the roof and attempted to conceal them through temporary repairs. They had the opportunity to examine the roof and, in all likelihood, did so. Based upon the temporary repairs that Defendants did perform, discovery will likely reveal that Defendants actually examined the roof.

Defendants incorrectly suggest that they "were not provided notice of the alleged roof defect prior to Plaintiffs directing remediation." (Motion, p. 24). Quite to the contrary, the allegations suggest that Defendants had knowledge of the roof defects prior to the sale. Sanctioning Plaintiffs would be rewarding Defendants for their underhanded tactics.

Defendants cite *City of Livonia v. Aquatic Renovation Sys*., a case that involved a construction defect, and then attempt to distinguish the case in favor of a motorcycle injury case. 2022 U.S. Dist. LEXIS 93072, *11 (E.D. Mich. May 24, 2022). As Defendants note, in *Aquatic Renovation Sys*., the Court determined that spoliation sanctions were not warranted because Defendant "had employees onsite who could have—and did—attempt to determine the cause of the water underneath the liner and fix it." *Id*. at * 14. *Aquatic Renovation Sys*. is analogous to this case in that Defendants had possession of the Property and, therefore, control of the roof prior to the sale. The allegations establish that Defendants attempted to fix the defective condition of the roof but failed to do so.

Spoliation sanctions are heavily fact intensive and are, therefore, inappropriate absent very specific factual findings. Given the allegations in the Complaint that employees confirmed that these leaks had been an ongoing issue for years, it is extremely likely that discovery will reveal that Defendants knew of the defects. Discovery may even reveal that Defendants inspected the roof, an inference that is likely given the allegations pertaining to temporary, ad hoc, and inadequate repairs Defendants made to the roof over the years.

Plaintiffs replaced a roof that was saturated and leaking and it was entirely reasonable for them to do so. Defendants' arguments are disingenuous, and the motion should be denied.

## IV. CONCLUSION

The allegations contained in Plaintiffs' Amended Complaint are sufficient to state claims for relief for fraud and breach of contract.

Dated: March 15, 2024    Respectfully submitted,

**LOFTUS & EISENBERG, LTD.**

By: __/s/*Ross Good*___
LOFTUS & EISENBERG, LTD.
Ross M Good (Illinois ARDC No. 6312917)
*Attorney for Plaintiffs*
161 N. Clark, Suite 1600
Chicago, Illinois 60601
(312) 899-6625
ross@loftusandeisenberg.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN,
SOUTHERN (DETROIT) DIVISION**

THE CASCADES OF IRON RIVER )
HOLDINGS, LLC, and BENJAMIN T. )
FRIEDMAN, )
                    )
       Plaintiffs, )
         v. )     Case No. 24-CV-10013
                    )     Hon. Mark A. Goldsmith
IRON RIVER LAND COMPANY, LLC, )     Magistrate Hon. Curtis Ivy, Jr.
and ROBERT W. POSSANZA, JR., )
                    )
       Defendants. )

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2024, I, Ross Good, electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the counsel on record.

Dated: March 15, 2024         Respectfully submitted,

**LOFTUS & EISENBERG, LTD.**

By: __/s/*Ross Good*___
LOFTUS & EISENBERG, LTD.
Ross M Good (Illinois ARDC No. 6312917)
*Attorney for Plaintiffs*
161 N. Clark, Suite 1600
Chicago, Illinois 60601
(312) 899-6625
ross@loftusandeisenberg.com