UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE CASCADES OF IRON RIVER
HOLDINGS, LLC, and BENJAMIN
T. FRIEDMAN

Case No. 24-10013

Curtis Ivy, Jr.

Plaintiffs,    United States Magistrate Judge

v.

IRON RIVER LAND COMPANY,
LLC, and ROBERT W. POSSANZA,
JR.,

Defendants.
_____/

## ORDER ON MOTIONS (ECF Nos. 29, 31, 39)

## I.    INTRODUCTION

Pending before the Court are Defendants' *Motion to Extend Discovery Deadlines* (ECF No. 29), *Motion for a Protective Order* (ECF No. 31), and *Motion to Amend Answer to Add a Counterclaim* (ECF No. 39).  The motions are fully briefed and ripe for review.  (ECF Nos. 29–34, 39–41).  On February 25, 2026, the Court also held a hearing on the motions.  (ECF No. 42).

## II.    DISCUSSION

### A.    Motion to Extend Discovery Deadline

On March 21, 2025, Defendants moved to extend the April 1, 2025, deadline

for discovery.  (ECF No. 29).  On March 13, 2025, Defendants served their requests for discovery, including interrogatories, requests for production, and requests for admission.  (*Id.* at PageID.500).  Plaintiffs' counsel responded that he did not intend to respond to the requests because they were served nineteen days prior to the discovery cutoff and his deadline to respond would fall after the close of discovery.  (*Id.*; ECF No. 30, PageID.523).  Defendants state that their discovery was drafted with the intent to timely serve it 30 days or more prior to the discovery deadline, but due to inadvertent calendar errors, discovery was not served timely.  (*Id.* at PageID.500).

Defendants argue that they served their discovery requests during the discovery period imposed by the Court, the timing of the requests was not done to delay an attempt to ascertain materials facts in dispute in this case, and their written discovery requests were served only two weeks after Plaintiffs served their written requests on Defendants.  (*Id.* at PageID.515).  Defendants note that a final pretrial conference has not been set, and Plaintiffs will not be prejudiced by a brief extension to conduct discovery because all Parties would benefit from additional time to gather relevant documents, develop more precise arguments, narrow factual disputes, and adequately prepare for trial.  (*Id.* at PageID.501, 515).  Defendants seek to extend fact discovery for sixty days.  (*Id.* at PageID.515).

Plaintiffs respond that upon realizing Defendants had yet to actively

2

participate in discovery, they "strategically elected not to pursue any depositions and wait until late in the discovery period to issue written discovery in this very simple matter." (ECF No. 30, PageID.523). Plaintiffs served their written discovery on February 28, 2025, making Defendants responses due March 31, 2025, the day before the discovery cutoff. (*Id.*). As stated, Defendants served their written discovery requests on March 13, 2025, and after Plaintiffs indicated that they did not intend to respond because the requests were untimely, Defendants sought concurrence to extend the discovery deadline. (*Id.*). Plaintiffs responded to the request for concurrence stating there was no cause for the extension, Defendants would not be able to get any depositions completed, and closed with "[l]ife happens, so I suggest a middle road of an agreement to answer one of the three discovery devices you sent on 3/13. Let me know your preference." (*Id.* at PageID.524). Defendants did not respond to their offer and instead filed the instant motion and shortly thereafter noticed four depositions. (*Id.*). Plaintiffs' counsel indicated that Plaintiff Friedman was in Isreal and counsel was about to leave for a vacation in Mexico. (*Id.*).

Plaintiffs argue that Defendants are barred from taking any depositions because they were untimely noticed, depositions were not addressed in the motion, Defendants failed to follow procedurals rules as the depositions were noticed for Chicago and did not comply with the Hague Convention while Plaintiff was

temporarily out of the country, and they were all noticed to be taken within the fourty-eight hours after Plaintiffs' counsel returned from vacation.  (*Id.* at PageID.529–30).  Plaintiffs also argue that Defendants are barred from collecting any written discovery because their requests were untimely as Plaintiffs' responses would be due after the close of discovery, and they waited a week to file this motion from the time they were notified of the timeliness issue.  (*Id.* at PageID.530–31).

Defendants replied that courts have recognized that good cause to modify a scheduling order "may exist where the moving party demonstrates a reasonable explanation for the delay and a lack of dilatory conduct."  (ECF No. 32, PageID.600–01) (citing *Interstate Packaging Co. v. Century Indem. Co.*, 291 F.R.D. 139, 145 (M.D. Tenn. 2013)).  They note that the Sixth Circuit has considered other factors such as "length of the discovery period, the relevance of the requested discovery, and the potential prejudice to the opposing party."  (*Id.* at PageID.601).  Defendants argue that to the extent that the Court may view their motion filed close to the deadline for discovery as untimely, they have shown excusable neglect as their delay was minimal and "caused by an isolated calendaring error, not a pattern of neglect or bad faith."  (*Id.* at PageID.602).  Defendants also noted that it was due to the generosity of the Court that provided Plaintiffs multiple attempts and two additional months to file a complaint in its

proper form, and then Plaintiffs served their written discovery on the last possible date to do so. (*Id.* at PageID.603). Finally, Defendants point out that the issues related to the depositions had not arisen when they filed the motion, and depositions were timely noticed, but could not be conducted because Plaintiffs' counsel responded that one of the deponents was out of the country and counsel was going on vacation. (*Id.*).

Liberal discovery rules allow litigants to see the full breadth of the evidence that exists in a case. This helps litigants avoid surprises, leads to the speedier settlement of cases, and helps prevent miscarriages of justice when evidence would otherwise be available to only one party. *Brown Badgett, Inc. v. Jennings*, 842 F.2d 899, 902 (6th Cir. 1988). Rules favoring broad discovery help "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). The Federal Rules of Civil Procedure strongly favor full discovery whenever that is possible. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013); *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

A case management order can be modified if there is "good cause and with the judge's consent." Fed. R. Civ. P. 16 (b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet

5

the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (citation modified).  The Court should also consider possible prejudice to the party opposing the modification. *Id.*  "Even if an amendment would not prejudice the nonmoving party, the moving party must nonetheless demonstrate good cause for 'why he failed to move for the amendment at a time that would not have required a modification of the scheduling order.'" *Barnes v. Malinak*, No. 3:15-CV-556-PLR-HBG, 2017 WL 3161686, at *2 (E.D. Tenn. July 25, 2017) (quoting *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010)).

During the February 25, 2026, motion hearing, counsel for Defendants admitted his office screwed up and did not serve written discovery in time for Plaintiffs to be able to respond before the close of discovery.  He stated that he "owns" the mistake as it is his firm and his responsibility.  Upon discovering their calendaring mistake, they immediately served their discovery requests and when Plaintiffs' counsel indicated he did not intend to respond, he filed the instant motion.  Defendants also argued that, despite their mistake with written discovery, they timely noticed the depositions and Plaintiffs' counsel simply cited their unavailability and decided that depositions will not be conducted.  Plaintiffs' counsel stated they played by the rules and Defendants are unable to show extraordinary circumstances to justify extending the deadline.  Plaintiffs' counsel

6

indicated that they would be willing to compromise on a thirty-day discovery window for the Parties to respond to each other's propounded written discovery, without any depositions being conducted as Plaintiffs did not notice any depositions in the first instance.

Recognizing Defendants' fault in serving discovery with insufficient time for Plaintiffs to respond, the Court finds that good cause exists to extend the deadline for the Parties to conduct full discovery. First, the Court finds that Defendants timely filed the instant motion prior to the close of discovery and did not act in bad faith or with dilatory motives, but rather, Defendants' counsel admitted he made an isolated calendaring mistake and sought to remedy it as soon as he was made aware. It should further be noted that Plaintiffs' counsel served their discovery requests only two weeks prior and waited until the final day possible to timely serve discovery, which provided them no available relief after Defendants objected to some of Plaintiff's discovery requests.

As to the depositions, Defendants timely noticed depositions and Plaintiffs indicated that one of the Plaintiffs and counsel were unavailable due to vacations. As with the refusal to respond to written discovery, Plaintiffs' counsel unilaterally decided that depositions would not take place rather than seek relief from the Court. Pursuant to Rule 45, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a

7

reasonable time to comply; . . ." Fed. R. Civ. P. 45(d)(3). While the Court understands the depositions were noticed on the eve of the close of discovery, rather than moving to quash the timely noticed subpoenas because the subpoenas did not allow Plaintiffs' reasonable time to comply, Plaintiffs' counsel opted to decline to participate because they were noticed for the two days following his return from vacation and he would not have time to prepare and they could not be rescheduled due to the discovery window closing shortly thereafter. As for Plaintiffs argument that Defendants are barred from taking any depositions because the topic was not raised in the motion, this argument fails to account for the fact that Defendants had not yet noticed the depositions at the time the motion was filed, therefore, Plaintiffs had not yet informed Defendants that depositions were not going to occur.

Finally, as Defendants note, without extending discovery deadlines, they will be prejudiced by being denied any meaningful right to conduct discovery. Similarly, due to the last-minute nature of Plaintiffs' discovery requests, Defendants' filing a motion for protective order rather than respond to Plaintiffs' requests in full, and the lack of any depositions taken, Plaintiffs were also unable to conduct meaningful discovery. Courts favor broad and full discovery whenever possible, and it is certainly possible here. *See Procter & Gamble Co.*, 356 U.S. at 682. And the Sixth Circuit has recognized that "[d]istrict courts, it is well

8

understood, enjoy 'broad discretion over docket control and the discovery process.'" *Hall v. Navarre*, 118 F.4th 749, 754 (6th Cir. 2024); (quoting *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018)). The undersigned opts to exercise that broad discretion here, particularly where an extension to the Case Management Order has not previously been sought and the case is still at this nascent stage. Thus, Defendants' motion is granted and both Parties shall be given the opportunity to conduct full discovery so a trial in this case can be "more a fair contest" and "less a game of blind man's bluff" with the "basic issues and facts disclosed to the fullest practicable extent." *Procter & Gamble Co.*, 356 U.S. at 682. That said, the Parties are *cautioned* that discovery is expected to commence immediately, the Parties shall conduct themselves according to the undersigned's Civility Requirement, and any further gamesmanship on behalf of either Party will not be tolerated.

### B.    Motion for Protective Order

During the hearing, the Parties conceded that due to how discovery proceeded in this case, if the Court were to grant Defendants' motion to extend the discovery deadline, the motion for protective ordered should be denied as moot. This is because the Parties have yet to meet-and-confer to narrow any issues with the requests because the discovery requests were propounded on the final day possible, leaving Defendants' deadline to respond to fall on the final day of the

discovery period. Rather than conducting a meet-and-confer, Defendants filed the motion for a protective order due to time constraints. Therefore, the motion for a protective order is denied as moot, and the Parties are directed to conduct a meet-and-confer in accordance with the undersigned's Practice Guidelines and attempt to mutually resolve any outstanding discovery disputes.

### C. Motion to Amend Answer to Add a Counterclaim

On August 7, 2025, Defendants moved to amend their Answer solely to assert a counterclaim on the promissory note and guaranty that Plaintiffs have failed to pay. (ECF No. 39). The gravamen of this case arises from the December 31, 2018, sell and purchase of the Iron River Care Center. (ECF No. 13, PageID.278, ¶ 8). Upon taking possession of the property, Plaintiffs (the buyer) discovered that the roof was in defective condition and replacement cost $240,000. (*Id.* at 280–81, ¶¶ 16–26). Plaintiffs also discovered two accounts receivable balances that were uncollectible in the amount of $32,644.44 and $4,420.05. Pursuant to the asset and stock purchase agreements, Plaintiffs timely notified Defendants of the issues and that they believed they were entitled to a set-off for the cost of the roof replacement and the accounts receivable errors (*Id.* at PageID.281–82, ¶¶ 26, 34). Defendants state that Plaintiffs' Amended Complaint acknowledges that they owe Defendants under the promissory note and guaranty but sought a set-off of the money owed to compensate them for the alleged

misrepresentations of the roof and accounts receivable.  (*Id.* at PageID.663–65).

Based on these confirmations as to the validity of the promissory note and

guaranty, Defendants had no need to file a counterclaim.  (*Id.* at PageID.665).

Defendants assert that based on what transpired during the July 23, 2025,

settlement conference before the undersigned it became clear that a counterclaim

was then necessary to protect their interests.[1]  (*Id.*).  Defendants argue that there

has been no undue delay in filing the motion as they filed it within two weeks of

discovering that Plaintiffs' strategy would require the counterclaim.  (*Id.* at

PageID.668).  They also argue that: (1) Plaintiffs have always had notice of the

potential counterclaim as it is undisputed that there is a valid promissory note

between the Parties and Plaintiffs defaulted on it; (2) there is no bad faith as they

are simply seeking to enforce the promissory note; (3) this is the first amendment

sought by Defendants, so there is no repeated failure to cure deficiencies; (4) there

is no undue prejudice to Plaintiffs; and (5) the counterclaim would not be futile as

all Parties agree the promissory note is valid, enforceable, and would require

Plaintiffs to pay any past due balance not subject to the set-off sought in the

Amended Complaint.  (*Id.* at PageID.668–70).

In response, Plaintiffs assert that Defendants have been dilatory and now

---

[1] Defendants state that they are unable to articulate the basis for their position on the record because they are restricted from revealing contents of settlement conference negotiations under the Federal Rules of Evidence.  (*Id.* at PageID.656).

11

seek to amend their Answer ten months after filing their Answer and eight months after the deadline to amend pleadings; Defendants have provided no justification in the motion; discovery would have to be completed; and the counterclaim sought was a compulsory counterclaim that is now waived.  (ECF No. 40, PageID.725–26).  Defendants reply that Plaintiffs admitted their true strategy is preserving a perceived litigation advantage rather than preventing actual harm, and that it was Plaintiffs' own pleading strategy that has now put the promissory note directly at issue, which establishes good cause for amendment.  (ECF No. 41, PageID.750–51).  Defendants assert that based on language in Plaintiffs' Amended Complaint, the promissory note obligations would be addressed through the set-off mechanisms rather than a separate enforcement proceeding.  (*Id.* at 751–52).

### 1.    Rule 13(a)

First, Plaintiffs argue that their set-off claims and Defendants' promissory note claim arise out of the same 2018 sale of the Iron River Care Center; thus, they are inextricably intertwined, and the counterclaim—pursuant to Federal Rule of Civil Procedure 13(a)—is now waived as it is a compulsory counterclaim that was required to be pleaded at the time Defendants filed their Answer.  (ECF No. 40, PageID.729–32).  Plaintiffs' argument fails as Defendants have moved to add a counterclaim in the same litigation which "[t]he [2009] amendments to the Federal Rules of Civil Procedure make clear that '[a]n amendment to add a counterclaim

[is to be] governed by Rule 15,' regardless of whether the counterclaim is compulsory." *Snyder Dev. Co. v. AutoZone, Inc.*, No. 2:18-CV-1274, 2019 WL 1115034, at *2 (S.D. Ohio Mar. 11, 2019) (citation modified).

This Court has explicitly addressed this issue and found "no merit to [plaintiff's] argument that Rule 13(a) required the [defendants] to assert their counterclaim in their initial response to the amended complaint or the counterclaim would be considered waived." *ABCCO, L.L.C. v. Michigan Reg'l Council of Carpenters Fringe Benefit Funds*, No. 10-14303, 2011 WL 13221052, at *3 (E.D. Mich. Apr. 26, 2011). The Court then reviewed the Supreme Court's discussion of Rule 13(a)'s purpose and found that it "further indicates that the rule does not apply to a party's request to add a counterclaim that it failed to assert initially in the same litigation:"

> The requirement [in Rule 13(a)] that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint.

*Id.* (quoting *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962) (citations omitted)).

Likewise, the Court does not find that Defendants waived their proposed counterclaim because they failed to raise it in their Answer in *this* litigation, and

13

the determination as to whether Defendants may do so is governed by Rule 15. *See Snyder Dev. Co.*, 2019 WL 1115034, at *2 (discussing the 2009 Advisory Committee Notes on Rule 13(f) amendment which instructs that when leave of court is required to amend a pleading to add an omitted counterclaim, amendment to add a counterclaim will be governed by Rule 15).

   2. Rule 15

Under Rule 15, leave to amend the pleadings should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, a motion for leave to amend a pleading "may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010)). "'A proposed amendment is futile if the amendment could not withstand a [Fed. R. Civ. P.] 12(b)(6) motion to dismiss.'" *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Riverview Health Inst. LLC*, 601 F.3d at 520).

Plaintiffs argue that Defendants were aware that the promissory note was executed and that the Plaintiffs defaulted on the note shortly before Plaintiffs filed this case, that nothing has changed since the deadline to amend pleadings in

14

December 2024, and Defendants have failed to provide good cause. (ECF No. 40, PageID.733). Plaintiffs also argue that allowing Defendants to amend their Answer would cause significant prejudice to Plaintiffs as fact discovery closed on April 1, 2025, and Plaintiffs did not have the opportunity to take discovery on the issue. (*Id.* at 735). Plaintiffs assert that "[i]f the counterclaim is injected now, Plaintiffs would suddenly face the prospect of an affirmative money judgment against them, without having had any chance to adjust their discovery and pretrial strategy to mitigate that risk." Finally, Plaintiffs argue that the counterclaim is futile because Defendants waived the claim as a compulsory counterclaim.

During the February 25, 2026, hearing, Defendants expanded on their claim that during the settlement conference Plaintiffs essentially raised a new claim that exceeded the scope of the set-off claims that Defendants previously had no notice of due to their reliance on the language in the Amended Complaint. In an abundance of caution, since much of the discussion centered around negotiations that took place during the settlement conference, the Court will not go into further detail here. Plaintiffs noted that their Amended Complaint requests monetary damages, generally, and does not narrow it to only the amount of the set-off requests.

Notably, the Parties do not dispute most of the factors that courts look to in deciding whether amending the pleadings is proper under Rule 15. Specifically, it

15

is not disputed that Plaintiffs had notice of the potential for the counterclaim, and Plaintiffs admit to expecting it earlier than when it was filed; that Defendants' motion to amend is not done in bad faith; that this is Defendants' first attempt to amend their pleadings; or that amending the pleadings would not be futile, other than Plaintiffs' belief that it is compulsory, which the Court already rejected, *supra* Subsection II(C)(1).

The disagreement lies on whether Defendants have shown good cause and whether there is undue prejudice to Plaintiffs. The Court finds based on the arguments made in the briefing and at the February 2026 hearing, Defendants have shown that good cause exists for amending their Answer to assert a counterclaim. Due to the Parties' failure to conduct meaningful discovery prior to filing the motion to extend the deadlines, Defendants assert, in good faith, that they first became aware that Plaintiffs' claims exceeded the scope in which they viewed this litigation during negotiations in the July 2025 settlement conference. Defendants assert that based on the Amended Complaint, the claims and damages in this litigation appeared to be limited to the set-off claims for the roof and the accounts receivable issue, but Plaintiffs made clear during settlement negotiations that their claims exceed that scope. Plaintiffs timely filed their motion to amend within two weeks of the settlement conference. Similarly, as the Court has now granted an extension to the discovery deadline, the Court finds that there will be no prejudice

16

to Plaintiffs because they will have the opportunity to conduct full discovery in this case.

As discussed, Rule 13(a) was "designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *S. Constr. Co.*, 371 U.S. at 60.  The Court concludes that the Rule 15 factors weigh in Defendants' favor and that justice will be served by allowing Defendants to add the proposed counterclaim.  *Hall* 118 F.4th at 754 ("District courts, it is well understood, enjoy 'broad discretion over docket control and the discovery process.'") (citation omitted).

## III.   CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) Defendants' *Motion to Extend Discovery Deadlines* (ECF No. 29) is **GRANTED**.  The Parties shall conduct a Rule 26(f) conference **within 21 days of the date of this Order**, and file a new joint discovery plan with the Court;

(2) Defendants' *Motion for a Protective Order* (ECF No. 31) is **DENIED as moot**; and

(3) Defendants' *Motion to Amend Answer to Add a Counterclaim* (ECF No. 39) is **GRANTED**.  Defendants shall file their amended pleadings on or before March 6, 2026.

**IT IS SO ORDERED**.

17

Date: March 2, 2026                          s/Curtis Ivy, Jr.
                                             Curtis Ivy, Jr.
                                             United States Magistrate Judge